# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KOREY BUCHANAN, | |
| Plaintiff, | Case No. 16-cv-4577 |
| v. | Judge John Robert Blakey |
| CHICAGO TRANSIT AUTHORITY, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Korey Buchanan has filed three separate discovery motions: a motion to reconsider [41]; a motion to determine the sufficiency of certain responses to his requests for admission [44]; and a motion to compel [47]. The Court will address each in turn.

## I. Motion to Reconsider

### A. The Court's Original Ruling

On September 19, 2016, Plaintiff filed a Motion To Compel Sworn Statement(s) To Interrogatory Answers. [30] at 1-3. Plaintiff claimed that Defendant Chicago Transit Authority's interrogatory responses were deficient insofar as they did not include "a statement under oath by the individuals who answered the interrogatories that the interrogatory answers are complete and accurate," as required by Federal Rule of Civil Procedure 33(b). [31] at 5. Plaintiff's motion focused on the verification requirement. Indeed, Plaintiff acknowledged at the time that "another motion to compel [would likely be required] in order to

address the many *substantive* discovery disputes that will remain unresolved." [31] at 2 (emphasis in original).

At the hearing on Plaintiff's motion on September 29, 2016, Defendant argued that the verification requirement did not apply, as it was solely "relying on documents to answer the specific interrogatory requests." [40] at 6:14-15; *see also* Fed. R. Civ. P. 33(d) ("If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by: (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.").

The Court denied Plaintiff's motion to compel without prejudice. [39] at 1. The Court held that where, as here, a party confines itself to the identification of business records pursuant to Rule 33(d), no verification is required. [40] at 10 ("The rule also allows for answers or certain responses to be done by way of documents . . . so to the degree the motion to compel is requiring verification, et cetera, that motion's going to be denied."). Plaintiff now asks the Court to reconsider this determination. [42] at 2.

B.  **Legal Standard**

Plaintiff's motion is made pursuant to Federal Rules of Civil Procedure 59(e) and 60(b)(6), which do not apply. The Federal Rules of Civil Procedure "do not explicitly provide a mechanism" for this Court to reconsider "interlocutory orders of any kind." *Caine v. Burge*, 897 F. Supp. 2d 714, 716 (N.D. Ill. 2012). Nevertheless, courts in this District have construed motions to reconsider interlocutory orders "as arising under Rule 54(b) in addition to the Court's inherent authority and the common law." *Id.*

Accordingly, the Court will consider Plaintiff's present motion as if it were brought pursuant to the Court's inherent authority and Federal Rule of Civil Procedure 54(b), in which case reconsideration is appropriate "where the Court has obviously misunderstood a party, where the Court's decision rests on grounds outside the adversarial issues presented to the Court by the parties, where the Court has made an error not of reasoning but of apprehension, where there has been a controlling or significant change in the law since the submission of the issue to the Court, or where there has been a controlling or significant change in the facts of the case." *Id.* A motion for reconsideration is "not an appropriate vehicle for relitigating arguments that the Court previously rejected." *Id.* at 717.

C.  **Analysis**

Plaintiff admits that his motion for reconsideration is redundant of his original motion to compel. [59] at 2 ("Buchanan's motion to reconsider does not depart in any material way from his position in the motion to compel."). Plaintiff's

3

motion for reconsideration is therefore procedurally flawed, insofar as it seeks to "relitigat[e] arguments that the Court previously rejected." *Caine*, 897 F. Supp. 2d at 717. In the interest of justice and pursuant to its broad authority to control discovery, however, the Court will look past these procedural obstacles.

The Court denied Plaintiff's original motion in light of several considerations. On one hand, Rule 33(b) sets forth the general proposition that each interrogatory "must" be answered "fully in writing under oath," and the "person who makes the [interrogatory] answers must sign them." The text of Rule 33, however, also draws a clear distinction between narrative "answers" under Rule 33(b) and identifications under Rule 33(d) (whereby a party, in the alternative, "may answer by specifying the record that must be reviewed" to derive the requested information). That is, under Rule 33(d), a party identifies "business records *from which the answer* to an interrogatory *can be found* rather than itself answering the interrogatory." 8B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2177 (3d ed. 2010) (emphasis added). To the extent responses made solely pursuant to Rule 33(d) are not "answers," as that term is understood in Rule 33(b), those same Rule 33(d) responses are ostensibly not subject to Rule 33(b)'s verification requirement.

Plaintiff's citations to the contrary fail to compel a different construction of Rule 33. In each decision cited by Plaintiff, the responding party provided *narrative answers* to the pending interrogatories, and those same narrative answers obviously required verification. [42] at 4. Plaintiff has identified no authority wherein a

4

party relying solely upon Federal Rule of Civil Procedure 33(d) was required to verify those identifications.

The Court also notes that Plaintiff's interpretation of Rule 33 fails to serve the principal purpose of the verification requirement—rendering interrogatory answers cognizable at summary judgment or trial. *See, e.g., Villareal v. El Chile, Inc.*, 266 F.R.D. 207, 211 (N.D. Ill. 2010) ("Requiring a party to sign interrogatory responses under oath serves the critical purpose of ensuring that the responding party attests to the truth of the responses [increasing the probability that] interrogatory answers may be used at trial[.]"). Clearly, identifications made pursuant to Rule 33(d) intrinsically involve an act of production of evidentiary significance. *Walden v. Seaworld Parks & Entm't, Inc.*, No. 4:11CV113, 2012 WL 4050176, at *1 (E.D. Va. May 31, 2012) (noting that Rule 33(d) "permits a party to produce its business records in lieu of providing answers to interrogatories"); *see also Bello v. Vill. of Skokie*, 151 F. Supp. 3d 849, 861 (N.D. Ill. 2015) (The "very act of production is implicit authentication.") (internal quotation omitted).

Furthermore, in terms of enforcing good-faith discovery, the additional requirement of a responding party's verification in this context would remain largely redundant of the obligations already imposed upon counsel by Rule 26. *See* Fed. R. Civ. P. 26(g) ("By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry: . . . with respect to a discovery request, response, or objection, it is: (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for

5

extending, modifying, or reversing existing law, or for establishing new law; (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action."); *see also* Adv. Committee Notes, Fed. R. Civ. P. 26 ("If primary responsibility for conducting discovery is to continue to rest with the litigants, they must be obliged to act responsibly and avoid abuse. With this in mind, Rule 26(g), which parallels the amendments to Rule 11, requires an attorney or unrepresented party to sign each discovery request, response, or objection.").

Nevertheless, to expedite this case, the Court exercises its own discretion to resolve this dispute pursuant to its "inherent authority to manage and oversee the discovery process." *Costello v. Poisella*, 291 F.R.D. 224, 230 (N.D. Ill. 2013) (internal quotation omitted); *see also Advert. to Women, Inc. v. Gianni Versace S.p.A*, No. 98 C 1553, 1999 WL 608711, at *7 (N.D. Ill. Aug. 4, 1999) (The Court "plainly possesses full authority to control the conduct of all parties (plaintiffs and defendants) in discovery pursued in this case."). Accordingly, Defendant is hereby ordered to serve upon Plaintiff revised interrogatory responses and a verification of the same signed by an appropriate agent of Defendant Chicago Transit Authority. Defendant's revised interrogatory responses and the corresponding verification are due three weeks from the date of this Memorandum Opinion and Order. For any revised responses made pursuant to only Rule 33(d), Defendant is specifically instructed to

6

"(1) specify for each interrogatory the actual documents where the information will be found; (2) affirm that [all] the information sought in the interrogatory is in fact available in the specified records; (3) demonstrate that directly answering the interrogatory would impose a burden on it; and (4) show that the burden of compiling the information is substantially the same for both parties." *A PDX Pro Co. v. Dish Network Serv., LLC*, 311 F.R.D. 642, 645 (D. Colo. 2015) (internal quotation omitted). Obviously, if Defendant elects to include narrative answers in its amended responses, those narrative answers must be verified. At this point in the proceedings and in light of the rulings below, the Court does not expect any further disputes regarding Defendant's interrogatory responses.

## II. Motion to Determine Sufficiency

Under Federal Rule of Civil Procedure 36, a party in receipt of a request for admission ("RFA") must either: (1) object to the request as improper; (2) admit the matter; (3) deny the matter; or (4) state in detail why it cannot truthfully admit or deny. Rule 36(a)(6) also allows the requesting party to move the Court for a ruling on the sufficiency of an answer or objection. The answering party then bears the burden of demonstrating that its answer is sufficient. *See Climco Coils Co. v. Siemens Energy & Automation, Inc.*, No. 04-cv-50342, 2006 WL 850969, at *1 (N.D. Ill. Mar. 28, 2006). If the Court finds an answer insufficient, it may deem the matter admitted or order the answering party to serve an amended answer. *Id.* If

the Court finds that an objection is not justified, it must order that an answer be served.[1] *Id.*

Plaintiff has moved for a sufficiency determination regarding Defendant's responses to sixteen requests. [45] at 1. The Court will address each in turn.

A. **The Responses To Be Modified**

Defendant originally objected to answering RFA Nos. 152, 158, and 164, citing attorney-client privilege. [45] at 4. Defendant has since withdrawn its objections regarding these requests, and now agrees to amend its responses. [54] at 7. The Court therefore denies as moot Plaintiff's motion with respect to RFA Nos. 152, 158, and 164.

B. **Objections Regarding Lack of Information**

Defendant insists that it "cannot truly admit or deny" the following requests "because the information it knows or can readily obtain is insufficient"[2]:

> **RFA 19:** The medical certification form was completed by Plaintiff's health care provider.
>
> **RFA 20:** The medical certification form was signed by Plaintiff's health care provider.
>
> **RFA 26:** The medical certification form was completed by Plaintiff's health care provider.

---

[1] To be clear, a "motion to determine sufficiency is not an appropriate vehicle to litigate the correctness of a response . . . . If a party believes a response to a request to admit is incorrect, the appropriate remedy under Rule 26 is to prove the matter at trial, and then apply to the court for reasonable expenses, including reasonable attorney fees, in making that proof." *Climco Coils Co.*, 2006 WL 850969, at *1.

[2] Defendant indicated that it made a "reasonable inquiry" with respect to RFA Nos. 149, 155, and 161; Defendant did not make a similar indication for RFA Nos. 19, 20, 26, and 27. As all of the foregoing requests concern information outside of Defendant's custody or control, this is a distinction without a meaningful difference.

8

> **RFA 27:** The medical certification form was signed by Plaintiff's health care provider.
>
> **RFA 149:** The document bearing Bates Stamp P 0001 (Exhibit A hereto) is a true and correct copy of what purports to be a letter dated August 18, 2015 by Lance Kirby, PA-C.
>
> **RFA 155:** The document bearing Bates Stamp P 0002 (Exhibit B hereto) is a true and correct copy of what purports to be a letter dated August 27, 2015 by Lance Kirby, PA-C.
>
> **RFA 161:** The document bearing Bates Stamp P 0003 (Exhibit C) is a true and correct copy of what purports to be a letter dated September 9, 2015 by Lance Kirby, PA-C.

[44-2] at 5-6, 21-22.

Defendant's responses to RFA Nos. 19, 20, 26, 27, 149, 155, and 161 are in accordance with Rule 36. While an answering party is obligated to undertake a "reasonable inquiry," that obligation is usually "limited to review and inquiry of those persons and documents that are within the responding party's control." *Hanley v. Como Inn, Inc.*, No. 99-cv-1486, 2003 WL 1989607, at *2 (N.D. Ill. Apr. 28, 2003). An answering party "is not generally required to question unsworn third parties," and "is certainly not required to ask plaintiffs about the genuineness of the documents they produced." *Id.* In light of these general principles, Plaintiff's motion is denied with respect to RFA Nos. RFA Nos. 19, 20, 26, 27, 149, 155, and 161.

9

### C. The Qualified Answer

Rule 36(a)(4) notes that "when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." Defendant relied upon this provision when responding to RFA No. 141, which asks Defendant to admit that "Plaintiff's work record, or M100, states 'FMLA Denied' with regard to his August 7, 2015 absence noted within the 'Sick/Attendance/Miscellaneous' section of his work record." [45] at 11. Defendant's qualified answer "admits a *version* of Plaintiff's work record, or M100, indicates 'FMLA Denied' for August 7, 2015 in the Sick/Attendance/Miscellaneous section of the work record." [44-2] at 19 (emphasis added).

Plaintiff objects to Defendant's qualification, alleging that it "was not made in good faith" and "cannot stand," because no other "version" of Plaintiff's work record exists. [42] at 11. Defendant conversely suggests that its qualification was proper, as "there is another M100 work record for Plaintiff for August 7, 2015 (CTA 000256) that does not indicate 'FMLA Denied.'" [54] at 6. Plaintiff rejects Defendant's explanation, claiming that while there "may be various versions of the copies" of the M100, there is "only one M110." [61] at 7. Plaintiff's insistence is grounded in his counsel's "long history of litigating cases with the CTA." *Id.*

Plaintiff's formalistic approach contravenes the functional purpose of Rule 36(a)(4). Multiple versions of the M100 have been produced in this litigation; RFA No. 141 referred only to "the M100"; and Defendant's qualification obviated any

10

potential ambiguity. Plaintiff counsel's "long history" with the CTA notwithstanding, Defendant's qualification is precisely the sort of common-sense precaution permitted by Rule 36(a)(4). Plaintiff's motion is accordingly denied with respect to RFA No. 141.

### D. Objections Regarding Hypotheticals

Defendant objected to, and refused to answer, the following four requests on the ground that each "does not seek admission of verifiable facts, but instead improperly assumes facts not in evidence and calls for speculation":

> **RFA 88:** CTA would have approved Plaintiff's Unforeseeable Claim Review regarding his July 6, 2015 absence if the form had been timely submitted to CTA.
>
> **RFA 89:** Plaintiff would not have been charged with a procedural violation if his Unforeseeable Claim Review form in regard to his July 6, 2015 absence had been approved.
>
> **RFA 146:** Plaintiff would not have been charged with a procedural violation if his Unforeseeable Claim Review form in regard to his August 7, 2015 absence had been approved.
>
> **RFA 148:** Plaintiff would not have been referred to a CTA General Manager with a Recommendation for Discharge if he had not been charged with a fifth procedural violation within 12 months.

[45] at 12-15.

Defendant objects to these requests insofar as they "are premised on facts that are not in evidence and, therefore [are] unrelated to this case." [54] at 4. To be sure, a request to admit may properly relate to the "facts, the application of law to fact, or opinions about either." Fed. R. Civ. P. 36(a)(1). However, Rule 36 does not

11

authorize requests for admission "unrelated to the facts of the case." Adv. Committee Notes, Fed. R. Civ. P. 36; *see also Abbott v. United States*, 177 F.R.D. 92, 93 (N.D.N.Y. 1997) (requests were improper insofar as they were "unconnected to the facts of the case at bar"). Since requests to admit "must be connected to the facts of the case, courts do not permit 'hypothetical' questions within requests for admission." *Morley v. Square, Inc.*, No. 10-cv-2243, 2016 WL 123118, at *3 (E.D. Mo. Jan. 11, 2016); *see also Sommerfield v. City of Chicago*, 251 F.R.D. 353, 355 (N.D. Ill. 2008) ("A number of the requests are hypothetical in nature and thus are not easily answered."); *Storck USA, L.P. v. Farley Candy Co.*, No. 92-cv-552, 1995 WL 153260, at *3 (N.D. Ill. Apr. 6, 1995) (Plaintiff "will not be required to admit to such hypothetical admissions.").

Plaintiff's motion unsuccessfully attempts to identify a factual predicate for its requests. *See, e.g.,* [45] at 12-15 ("*Fact:* Buchanan's Unforeseeable Claim Review ("UCR") form regarding his July 6, 2015 absence contains his explanation as to why he was late calling-in for unforeseeable FMLA leave that day."). Despite these efforts, Plaintiff cannot to establish the critical presumptions implicit in RFA Nos. 88, 89, 146, and 149; namely, that the forms regarding his absences were submitted in a timely fashion or approved. Plaintiff's presumptions have no basis in the record before the Court, such that RFA Nos. 88, 89, 146, and 149 are essentially hypothetical questions "unconnected to the facts of the case at bar." *Abbott*, 177 F.R.D. at 93. Plaintiff's motion is accordingly denied with respect to RFA Nos. 88, 89, 146, and 149.

### E. Objections Regarding Time Frame

RFA No. 29 asked Defendant to admit or deny that "Sedgwick approved Plaintiff for intermittent leave due to his serious health condition (back injury)." [45] at 15. Defendant objected to this request as "vague and ambiguous as to scope and timeframe." *Id.* Defendant further explained that the request was particularly vague in the context of this case, as "there were three separate time periods that Sedgwick approved Plaintiff for intermittent FMLA leave." [54] at 6. Defendant also insisted that "Plaintiff can tender an amended [RFA] no. 29 to clarify the scope and time period ambiguity." *Id.*

Defendant's objection inverts the governing standard—if Defendant "believes that Sedgwick's three approvals affect its answer, it can qualify accordingly." [61] at 9. Plaintiff's motion is granted with respect to RFA No. 29. Defendant is given three weeks from the date of this Memorandum Opinion and Order to amend its response to RFA No. 29. Defendant is specifically given leave to qualify its response as necessary, in accordance with Rule 36.

## III. Motion to Compel

Plaintiff's motion to compel seeks an order: "(1) requiring CTA to conduct an appropriate investigation and serve full and complete amended answers to Document Requests 51, 52, and 53 by a date certain;" and (2) "deeming CTA's improper objections to Interrogatories 1-5 and 9-20, and Document Requests 3-7, 10-27, 29, 33-37, 48, 49, and 54-57" waived. [48] at 15.[3]

---

[3] The Court declines to deem any of Defendant's objections waived in the absence of a ripe dispute. Defendant clearly represented that it "was not withholding any document or discovery response"

13

## A. Legal Standard

This Court has broad discretion in discovery matters, including ruling on motions to compel. *See James v. Hyatt Regency Chi.*, 707 F.3d 775, 784 (7th Cir. 2013). Pursuant to Federal Rule of Civil Procedure 26(b)(1), Plaintiff is entitled to discover:

> [A]ny nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden and expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Rule 37(a)(4) permits the Court to order disclosure of information when the original answer or production is "evasive or incomplete." Rule 26(b)(2)(C) conversely allows the Court to limit discovery if the information "sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or "the proposed discovery is outside the scope permitted by Rule 26(b)(1)."

## B. Document Requests 51, 52, and 53

The document requests at issue seek: (1) CTA Employee Forms for Unforeseeable Claim Review ("UCR Forms") received by CTA from its employees between January 1, 2013 and the present; (2) documents related to CTA's decision to approve or deny the UCR Forms; and (3) other documents related to CTA's

---

based upon the objections at issue. [55] at 11. Plaintiff's request to deem these objections waived is accordingly denied as moot.

application of its UCR policy. [48] at 3. CTA objected to the production of this material (the "UCR Material") on the grounds that:

> the requested documents are not proportional to the needs of this case because the burden and expense CTA would incur to review files of every Unforeseeable Claim Review form submitted by any of its 10,000+ employees over a nearly three year period outweighs any likely benefit of any such information. CTA also objects to this Request because it requires CTA to disclose confidential medical information of persons who are not parties to this litigation.

[48-3] at 15-16.

Plaintiff argues that CTA's objections are improper and unavailing, given that: (1) Defendant's burden is lessened by virtue of the "Recording Spreadsheet" already produced in discovery, which catalogs Defendant's receipt of UCR Forms; (2) the UCR Material is critical to Plaintiff's case; and (3) Defendant's confidentiality concerns are misplaced, given the Agreed Confidentiality Order already in place. The Court will address each argument in turn, mindful of Rule 26's admonition that discovery must be "proportional to the needs of the case."

1.   **The Burden Implicated By The UCR Material**

The burden imposed by production of the UCR Material would be substantial. Defendant's original objection stated that producing the UCR Material would require a manual review of over 10,000 employee files. In its response, Defendant further explained that at least 750 UCR forms are generated and logged on each of the Recording Spreadsheets for 2013, 2014, 2015, and 2016. [55] at 5. What is more, "the UCR forms are not always maintained electronically and, even where an

electronic copy exits, it is not in a searchable format." *Id.* Accordingly, "CTA would have to conduct a manual review of its employee files in order to identify" the full universe of UCR Material. *Id.*

### 2. The Need For The UCR Material

Plaintiff brings two claims, for improper interference and retaliation under the Family and Medical Leave Act ("FMLA"), 29 US.C. § 2061 *et seq.* [1] at 13-16. Plaintiff grounds his request for the UCR Material in his FMLA interference claim, [60] at 7, which requires him to establish that: (1) he was eligible for FMLA protection; (2) Defendant was covered by the FMLA; (3) he was entitled to take leave under FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) Defendant denied Plaintiff the FMLA benefits to which he was entitled. *See James v. Hyatt Regency Chicago,* 707 F.3d 775, 780 (7th Cir. 2013).

The FMLA provides eligible employees with the right to take up to twelve weeks of unpaid leave due to a serious health condition. *See* 29 U.S.C. § 2612. When the "need for leave is not foreseeable, an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.303(c). If an employee "does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied." *Id.*

The parties essentially agree that CTA employees seeking to take intermittent FMLA leave must call-in at least one hour before their shift begins,

16

absent unusual circumstances. [55] at 1. The parties further agree that "an employee who fails to comply with CTA's 1-hour call-in policy may submit a [UCR] request to explain why s/he was unable to comply with the policy . . . . If an employee's UCR request is denied, s/he is subject to discipline up to and including discharge, for failing to comply with the call-in policy." *Id.* at 2. In short, "CTA's purported 'usual and customary' policy is effectively that an employee who wishes to use FMLA leave must call in 1-hour before their shift begins *or* meet the requirements of the UCR process." [60] at 8.

Plaintiff was allegedly unable to call ahead on July 6, 2015, and August 7, 2015, due to the medical condition which necessitated his FMLA leave in the first instance. *Id.* His UCR requests were subsequently denied, and he was disciplined. *Id.* Defendant claims that it disciplined Plaintiff because he failed to comply with its "usual and customary" notice procedure. *Id.* at 5. Plaintiff now seeks the UCR Material under the theory that it will reveal how Defendant applied its notice procedure to other employees, which is suggestive of whether Defendant's notice procedure was in fact "usual and customary." *Id.*

At a minimum, the Court finds that the UCR Material is relevant to Plaintiff's interference claim. To succeed on his FMLA interference claim, Plaintiff must demonstrate that he was "entitled" to leave. Defendant claims he was not so entitled, insofar as he failed to comply with the "usual and customary" notice practice. The UCR Material is relevant to the question of whether Defendant's purported practice was in fact "usual and customary."

17

That said, Plaintiff has vastly overstated the need for this material. Plaintiff can explore the purported "usual and customary" nature of Defendant's practice in any number of ways, including, *inter alia*, the other discovery tools discussed in this Memorandum Opinion and Order.

### 3. Defendant's Confidentiality Concerns

Defendant's confidentiality concerns are misplaced. As Plaintiff rightly points out, this Court has already entered an Agreed Confidentiality Order. [21] at 1. The UCR Material could be produced pursuant to the procedure enumerated therein. The Court also credits Plaintiff's argument that Defendant's redactions of the Recording Spreadsheet are inappropriate. *See U.S. Equal Employment Opportunity Comm'n v. Dolgencorp, LLC*, No. 13-cv-04307, 2015 WL 2148394, at *2 (N.D. Ill. May 5, 2015) ("[R]edaction of otherwise discoverable documents is the exception rather than the rule."), *reconsideration denied, stay granted*, No. 13-cv-04307, 2015 WL 3856403 (N.D. Ill. June 19, 2015).

### 4. The Compelled Production

In light of the foregoing, Defendant is ordered to produce an unredacted copy of the Recording Spreadsheet for 2013. Plaintiff's motion to compel is otherwise denied. The production of the UCR Material implicates hundreds of hours of work with relatively negligible benefit. Plaintiff can utilize the unredacted Recording Spreadsheet to generate more targeted discovery which will yield essentially the same benefit at a far lower cost.

## IV. Conclusion

Plaintiff's motion to reconsider [41] is granted in part and denied in part; Plaintiff's motion to determine the sufficiency of certain responses to his requests for admission [44] is granted in part and denied in part; and Plaintiff's motion to compel [47] is granted in part and denied in part.[4] Defendant is given three weeks from the date of this Memorandum Opinion and Order to: (1) revise and verify its interrogatory responses; (2) amend its response to RFA No. 29; and (3) produce an unredacted version of the Recording Spreadsheet pursuant to the Agreed Confidentiality Order. Plaintiff's motions are otherwise denied.

The Court also reminds the parties of their collective obligation to pursue discovery in a courteous and efficient manner. The motions before the Court are replete with references to rude comments, allegations of bad faith, and other indicia of unprofessional litigation. If the parties insist on continuing in this unproductive fashion, the Court will not hesitate to take extensive remedial measures.

Dated: December 7, 2016

Entered:

_____
John Robert Blakey
United States District Judge

---

[4] In light of the foregoing, Plaintiff's request for fees and costs is denied. *See* Fed. R. Civ. P. 37(5)(C) ("If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.").